[No. 1641.]

## H. R. LEMAIRE, RESPONDENT, *v.* P. WALSH, APPELLANT.

ELECTIONS—STATUTORY REQUIREMENTS—CONTEST—INDEFINITENESS OF STATE-
MENT—BALLOTS—SQUARE FOR VOTER'S MARK—USE OF OBLONG SQUARE.

1.  A statement on an election contest gave the name of contestant in the
    title of the cause as "H. R. Lemaire," and the name of the contestee as
    "P. Walsh." In the body of the statement contestant's name was
    given as "Henry R. Lemaire," and the statement was sworn to by
    "Henry R. Lemaire." The body of the statement complained of
    "Patrick Wals," and in the prayer he was called "Patrick Walsh."
    *Held* that, no motion to strike or make the statement more certain
    having been made on the contest, the statement could not be com-
    plained of on appeal; the defect being at most merely a defective
    statement of a cause of action, and not a failure to state any cause of
    action.

2.  Where a contestee in an election contest failed to make any objection to
    the statement of contest on the ground that it failed to state with
    sufficient definiteness the term for which contestant claimed he had
    been elected, he could not complain on appeal.

3.  Under the statute providing that an elector in voting shall put a cross
    in a square on the ballot, the use of an oblong square, or a parallel-
    ogram with length about double its width, did not render the ballot
    invalid.

APPEAL from the Third Judicial District Court, Lander
County; *Peter Breen*, Judge.

Election contest by H. R. Lemaire against P. Walsh over
the office of Long Term Commissioner of the County of Lan-
der. From a judgment in favor of contestant, contestee
appeals. **Affirmed.**

The facts sufficiently appear in the opinion.

*William Woodburn* and *W. D. Jones*, for Appellant:

The record in this case is in two volumes: (1) The state-
ment on motion for a new trial and on appeal as settled by
the judge (pages 1 to 89). (2) The judgment roll and exhib-
its, taken up on the order of the judge (pages 1 to 56). The
first will be referred to in this brief as the "Statement," and
the second as "Judgment Roll and Exhibits."

I.   This appeal is from both the judgment, and also from
the order overruling and denying the motion for a new trial.
(Judgment Roll and Exhibits, 48.)

II.  Walsh alone has appealed. Therefore only such errors
as have been assigned by him (Statement, 75) can be con-

sidered on this appeal. (*Dennis* v. *Caughlin*, 22 Nev. 453; *Nesbitt* v. *Chisholm*, 16 Nev. 39; *Moresi* v. *Swift*, 15 Nev. 215; *Maher* v. *Swift*, 14 Nev. 324.)

*History of the Case*: This appeal grows out of *an attempt* of respondent to deprive appellant of the office of county commissioner of Lander county for four years, commencing January 5, 1903. At the election in 1902, respondent and appellant were rival candidates for that office, and appellant was by the returns of the election officers, by a recount of the votes by the county commissioners, and by the district judge on the request of the respondent, declared elected to said office (Statement, 66–7) by a majority of three votes.

December 13, 1902, respondent filed his statement of contest against appellant (Judgment Roll and Exhibits, 6), and on December 20th appellant filed his answer. (Judgment Roll and Exhibits, 10.) The trial began February 9, 1903 (Statement, 6), and respondent rested his case the afternoon of the next day (Statement, 45), and the court took a recess until the next day. February 11th, at 10 a. m., respondent filed an amended statement. (Statement 46, lines 3–5.) At 1:30 p. m. the same day, appellant filed his answer to the amended statement. (Statement 46, lines 10–11.) February 12th, counsel argued the case and submitted it for decision. (Statement, 52.) February 26th the decision was filed. (Judgment Roll and Exhibits, 31; Statement, 65.) The judgment is in favor of respondent by one vote. (Statement, 65; Judgment Roll and Exhibits, 30.)

On March 3, 1903, the judge extended appellant's time twenty days in addition to the time allowed by law to file and serve notice of motion and statement on motion for a new trial (Judgment Roll and Exhibits, 44), and on March 20th appellant filed and served his notice of motion for a new trial (Statement, 78), and on the 21st of March his statement on motion for a new trial. (Statement, 80.)

No proposed amendments to the statement were filed or served within five days after the statement was filed and served.

May 13, 1903, the judge settled and allowed the statement as correct. (Statement, 88.) And it was filed after being settled. (Statement on fly leaf, just under cover.)

III.   The first assignment of error is upon defendant's exhibit M, Austin, Second Ward.  (Judgment Roll and Exhibits, 33; Statement, 75.)   Appellant objected to this ballot "upon the ground that there is a distinguishing mark in the square after the name Bowler, which is not a cross or an X. (Statement 25, lines 1–5.)   The court counted the vote for respondent.   (Statement 62, line 5.)

Appellant thinks that the court committed error in counting this ballot for Mr. Lemaire.   (Statement 75.)

We give a fair illustration of the mark objected to.   It has five points, two of which are large and heavy, the other three being narrow, the one pointing northeast being longer than any of the rest, the two lower ones being the shortest of them all, one of which has a sharp point, and the other a square point, thus making it impossible to construe the figure into either a cross or an X.

The shape of the mark precludes its having been made with the rubber stamp by one impression.   To prove this look at the twenty-five other markings on this ballot, and each one is found to be a very plain cross or X, evidently made with the rubber stamp by only one impression; and each of the twenty-five markings has only the four points. But this one has the five points, and clearly distinguishes this ballot.   The mark complained of is as distinctly an earmark that completely identifies this ballot from every other ballot, as would a five-pointed brand on one steer, sheep, horse, pick, or shovel, identify such steer, sheep, horse, pick, or shovel, from another steer, sheep, horse, pick, or shovel plainly branded with any of the other twenty-five marks.

Suppose a twenty-dollar gold piece, marked by stamping into it this five-pointed star, and another, marked equally plain with either of the other twenty-five marks, as this exhibit—would either of the justices of this court have any difficulty in distinguishing the one from the other?   If you could tell the one from the other by the brand, then this is an identified ballot, and is void.   Hence, we ask that it be deducted from the respondent.

IV.   The next specification of error is upon defendant's exhibit O.   (Statement, 75; Judgment Roll and Exhibits.)

*Objection:*  "We object to this ballot for the reason that there is an *erasure* which destroys the texture of the paper near the right-hand end of the name of Button and between the name Button and Frank."    "Ballot admitted in evidence and marked defendant's exhibit O."    (Statement, 25; Judgment Roll and Exhibits, 34.)

The court overruled the objection and counted the ballot for respondent.    (Statement, 62; Judgment Roll and Exhibits, 27a.)

It will be noticed that the objection is because of an erasure.   The ruling of the court is clearly erroneous.   It is as follows:   "In Austin Precinct No. 2, objections to defendant's exhibits M, N, O, P, Q, and R, are overruled; the ballots are properly marked.   To exhibit O exception is taken solely for the reason that the voter voted for and against constitutional amendment No. 5, and it is claimed that this constitutes a 'distinguishing mark.'   It seems to us that the rule laid down in *State* v. *Sadler*, 25 Nev. 181, that ballots whereon the voter had voted for more candidates for the same office than were to be elected were not held void, but should not be counted for either of the persons voted for, should here apply.   Such double voting in our opinion comes within the spirit, if not the letter, of section 26 of our so-called Australian Ballot Law.   Laws are also to be construed according to their spirit and meaning, and not merely according to their letter.   (*Buckner* v. *Lynip*, 22 Nev. 439, 440.)"

Here we have the objection, plain and simple, the ballot, and the ruling of the court, with the reasons:   (1) The objection is to an *erasure* in a particular place.   (2) The ruling is that "the objection is taken *solely* for the reason that the voter voted for and against constitutional amendment No. 5, and it is claimed that this constitutes a distinguishing mark."   (Judgment Roll and Exhibits, 27a; Statement, 62.)

Pray, who claimed that this ballot had any such marks upon it?   The objection is silent on that point, and so is the ballot.   There has been no attempt on this ballot (Exhibit O, Judgment Roll and Exhibits, 34) to vote either "for" or "against" "Constitutional Amendment No. 5."   The ballot is a blank on that subject.   But this ballot has a plain

erasure at the point on the ballot designated in the objection.

The learned judge, in deciding that Mr. Lemaire was elected to the office in question by one vote, allowed to Mr. Lemaire two similar erasures, thus taking from Mr. Walsh two votes complained of by respondent, at the same time overruling the two objections made by appellant to two similar erasures on ballots voted for Mr. Lemaire; on exhibit O reciting an objection not made, and which does not exist on the ballot, and on exhibit V, by simply saying that the objection is "overruled, as being without merit." (Statement, 63; Judgment Roll and Exhibits, 28.)

The rulings of the court on behalf of respondent, above referred to, refer to plaintiff's exhibits 3 and 13. (Statement, 60, lines 2 and 3; Judgment Roll and Exhibits, 26, lines 25 to 31.) We refer to these four ballots to show by the record that out of four ballots objected to because of erasures, to wit, two by respondent, and two by appellant, the two objected to by respondent were deducted from appellant, whilst the two objected to by appellant were not deducted from respondent, and, as a result, respondent has been adjudged the office on those two erased ballots; whereas, had they been deducted from respondent, as were the other two from appellant, Mr. Walsh would have obtained judgment for the office in the lower court by precisely the same majority as was Mr. Lemaire.

The error must have occurred to the learned judge below by an oversight of the objections of appellant, and of the ballots when examining them before writing his decision and judgment in the case.

In addition to the foregoing, as to exhibit O, we submit that the markings on this ballot show anything but a careful voter. The stamp was used twenty-eight times on the ballot. Every office on the ticket, both state and county, was voted upon. The United States senatorship and constitutional amendment No. 5 was omitted. There is not a single clean mark on the ballot. Every one is either *blotched* by using too much ink, or *spread* by bearing very heavy on the stamp. Assuming that the voter began by voting for congressman, he began by blotching that mark, and increased the ink and the weight on the stamp until the eight marks on the last

column are nothing but blotches and crosses out of shape, any one of which alone on a ballot, or with others made decently, would identify the ballot.

If this kind of a ballot is held good, where will the line be drawn between a good and bad ballot? Compare the markings on this ballot with those upon exhibits M, R, JJ, and you will see the difference between reasonably well marked ballots and this one. Put M, R, and JJ in one bunch, and O, T, V, X, AA and PP in another, and the carelessness exhibited on each of the latter will be apparent.

Therefore, in addition to the erasure complained of on exhibit O (Statement, 25), it is submitted that it should be excluded by reason of the many distinguishing marks upon it. If the markings came from poor eyesight or a lame hand, or other physical disability, the voter should have had a friend mark his ballot for him. If it came from drunkenness, the ballot should not be counted.

Upon the question of carelessness, that renders the ballot void, we desire this argument to apply also to exhibits T, V, X, AA and PP.

V. Exhibit R is a ballot objected to by appellant because of "a blotch of ink at the head of the ticket after General Election A. D." (Statement, 27; Judgment Roll and Exhibits, 35.) The court counted the ballot for respondent over the objection (Statement, 62; Judgment Roll and Exhibits, 27a), and in doing so said: "In aforesaid Austin precinct No. 2, objections to defendant's exhibits M, N, O, P, Q and R are overruled; the ballots are properly marked." Then follows the specific reason given for overruling exhibit O, which we have heretofore copied in full and commented upon in discussing exhibit O.

This ballot, exhibit R, together with M, N, O, P and Q are held to be properly marked by the voter. We have, in discussing M and O endeavored to show that neither M nor O was properly marked. If R with the ink blotch is properly marked, our convictions of the Australian Ballot Law are not well founded. The law as framed is: (1) To secure secrecy; (2) Purity; (3) Uniformity. Does this mark aid either? With the ink blotch upon it, its secrecy, purity and uniformity are totally destroyed. If the blotch, as we con-

tend as to exhibit M is an earmark, then it distinguishes, and renders the ballot void.

The learned judge who tried and decided the case took occasion, on overruling the motion for a new trial, to comment on this ballot and ink blotch. (Judgment Roll and Exhibits, 46.)

To illustrate our views on this ballot, we ask the indulgence of the court to digress to say: Mr. Lemaire being the plaintiff, and this being a civil action, he must preponderate in his proof, or else is not entitled to a judgment. The rule that applies to the case as a whole necessarily applies to every ballot. This is forcibly illustrated by the decision that is in favor of Mr. Lemaire by only one vote.

Therefore, if the weight of the proof as to this ballot is not in favor of its validity, then it should be deducted from his majority as found by the lower court. To find, if possible, whether or not the proof of the validity of this ballot weighs on the side of respondent, or of appellant, let us examine that which the learned district judge incorporated into his "order overruling the motion for a new trial," with reference to this ink blotch. (Judgment Roll and Exhibits, 46.)

Said the court: "In respect to exhibit R about which the court had some doubt because of its containing a small ink stain at the head of the ballot, the benefit of the doubt was given to the voter in support of his constitutional right, for the reason, among others, that the court's attention was called to the fact by the pleadings, the argument and discussions of counsel, and by judicial notice, that all of the ballots in the case had been handled and thumbed over by inspectors of election, county commissioners in recounts, and lawyers in *mandamus* proceedings four separate and distinct times before the trial of this cause, and that in consequence the ballots could not possibly be in their original condition at the time of this trial. The ballot is one of the most intelligently marked of the four or five hundred examined."

The observations of the learned judge embodied in the order overruling the motion for a new trial, above set out, prove that the objection of appellant to exhibit R should have been sustained. Whilst the court in passing on the objection made the sole observation that "the ballots are

properly marked," yet it admits, when passing on the motion for a new trial, that at the time of deciding the case in February it had doubt of the legality of the ballot because of the "blotch of ink at the head of the ticket after General Election A. D." which condition of mind of the court resulted, as a matter of law, proved by the doubt, from a failure of respondent to prove the legality of the ballot by a preponderance of evidence, which the blotch of ink forbade because the blotch of ink clearly distinguishes the ballot from every other ballot. It is the only ballot of the kind—marked as it is—cast at that election. True, we have but eleven of the ballots in the record, but the legal proof that there was not any other ballot so marked is found in the fact that the reporter's notes, which are, *in extenso*, a part of the statement settled by the court (Statement, 3 to 53), are silent as to any other ballot so marked, and it is to be presumed that respondent would have taken steps to have any other such ballot before this court if any such exists, and in the absence of such showing it is presumed that this is the only ballot so marked with a blotch of ink.

Then the learned district judge calls the mark objected to "a small ink stain." The objection calls it "a blotch of ink." The size of the mark, and its color, are best calculated to decide whether it be "a blotch of ink," or "a small ink stain." But it can make no difference what name it bears. It is the thing itself that decides its doom. "A rose by any other name would smell as sweet."

The fact that the ballots had been four times counted in other proceedings is immaterial in determining whether this ballot is distinguished or not.

The plaintiff brought this suit after the count by the election boards, county commissioners and district judge. He fails to complain of any "thumbing over by inspectors of election, county commissioners in recounts, and lawyers in *mandamus* proceedings," or to attempt any proof of any such thing. On the contrary, by bringing the contest for, and obtaining and claiming the judgment for the office, predicated upon these ballots, the respondent vouched that this particular ballot had the ink blotch upon it when it left the voter's hands, and, with that blotch on it, that it was a good

ballot, for his majority, as found by the court, was but one vote; and to take this ballot away from respondent, he could not have obtained any judgment in the action.

On bringing suit against another who has been declared elected to an office, and is exercising its functions, as in this case, the respondent is precluded from claiming that the elector has any constitutional right to support on a ballot which the elector voted with such a mark upon it. There is no constitutional right involved on a ballot containing a mark, when prepared by the voter, which destroys the secrecy, purity and uniformity of it.

The able opinion of Belknap, J., in *Lynip* v. *Buckner*, 22 Nev. 445, and his interpretation of the last sentence of section 26 of the statute "providing for a secret ballot," renders this exhibit R invalid.

Appellant, therefore, prays the court to deduct this vote from respondent.

VI. Exhibit T (Judgment Roll and Exhibits, 36) was objected to by appellant (Statement, 29) "on the ground that there is a distinguishing mark, not a cross or X, opposite the name of Allen." The court overruled the objection (Statement, 63) also (Judgment Roll and Exhibits, 28) "as being without merit."

It will not be claimed that the mark complained of has been changed by any handling of the ballot since it left the voter's hands, and it will be admitted that this identical mark was placed upon the ballot by the voter in the booth on election day, as will be admitted as to the marks after the names of Van Duzer and Sparks. Nor can it be shown that either of the three marks are the result of folding the ballot before the ink was dry, for there is no sign upon the ballot that the ballot was folded before the ink was dry. Then the voter must have used so much ink in placing the stamp after Van Duzer that the paper absorbed it till the cross or X was largely destroyed. As to the mark complained of after Allen, the voter deliberately put the stamp on two or more times, thus making the eight-pointed mark, which identifies the ballot and destroys it. It is not a cross or X, but is two crosses or a star. (*Sweeney* v. *Hjul*, 23 Nev. 423–4, 426; *State* v. *Sadler*, 25 Nev. 181.)

We refer the court to and request that the argument offered as to exhibit M be read and considered as to exhibit T, as far as it applies.

VII. Exhibit V (Judgment Roll and Exhibits, 37) was objected to by appellant (Statement, 30) "on the ground that it has distinguishing marks after the name of Allen, after the name of Talbot, after the name of Davis, and after the name of Gayhart, not crosses or X's, and also that opposite the name of Russell the cross extends below the line, and that the cross extends below the line after the name of Driscoll, and there is a distinguishing mark, not a cross, after the name of Kirman." Also (Statement, 46): "Mr. Jones: We offer this ballot in evidence and, in addition to our former objection, make this objection, to wit, that it has an erasure that destroys the texture of the paper on the right-hand end of the line between the names of Bowler and Talbot."

The court, in deciding this ballot, grouped it with exhibits S, T, U, and W, and overruled the objections to each "as being without merit." (Statement, 63; Judgment Roll and Exhibits, 28.) Here was a blanket ruling on five ballots, all against appellant where the objections to S (Statement, 29) is for distinguishing marks in three different places on the ballot; to T (Statement, 29) because of a distinguishing mark opposite the name of Allen, which we have just discussed, and think is clearly a mark that invalidates exhibit F; to exhibit U for two distinguishing marks; to V because of several distinguishing marks, *and also for an erasure;* and to W (Statement, 31) because of four distinguishing marks.

Are the objections to exhibit V "without merit?" Of the twenty-four markings on exhibit V there are after Howell, Booher, Breen, MacDonald, George, Dupuy, and Dalton, crosses that are comparatively clean and uniform, leaving seventeen that are blotched and distorted out of all shape. Remembering the seven grounds of the first objection, and the erasure upon which the second objection was predicated, examine this ballot. It is very plain that the voter put the twenty-four markings upon the ballot that are in and near the various spaces opposite the names, and also the various specks, smears and finger marks of ink upon this ballot.

Take the marks after Van Duzer, Sparks, Allen, Talbot, Davis, Gayhart, Kirman, Parker, Driscoll, Lemaire, Russell or Skully, and compare them with the statutory requirement. It must be "a cross or X." It is evident that this ballot was inked as it is by the voter. Does it show any desire for secrecy, purity, or uniformity? If you should see a drunken man return such a ticket to the inspectors, would it not be just what is to be expected. There is not a child in a kindergarten class on the coast who would return a paper in the untidy condition of this ballot. Neither was this ballot marked by a voter having due regard for the law. There is not a sober, honest voter in the state who could be induced to so mark his ballot. This ballot is covered with the earmarks of illegality. Without the erasure it is a void ballot.

The law is that the voter, having folded his ballot, shall deliver it with the stamp, ink and ink pad to the inspector. (Stats. 1901, 112.) Therefore, the voter has but the one stamp in the booth, and returns it with his ballot. That stamp must be the "cross or X," and must be reasonably uniform. It would take at least a dozen differently shaped stamps to make the different figures on this ballot. Then the figures placed after Sparks, Allen, Talbot, Ryan, Davis, Gayhart, Sweeney, Maute, Kirman, Parker, Watt, Malloy, Driscoll, Lemaire, Russell and Skully, are identifying, and destroy the secrecy, purity and uniformity, not only of ballots in general, but of this one in particular. How did the voter make either one of the last-mentioned figures by only one impression of the stamp? Let each or all of the justices take a stamp, ink and pad such as used at last election, and try to mark a sample ballot as this one is marked, and the court will find that it cannot be done by one impression each. Those after Van Duzer and Sparks and Allen can be made by the stamp and too much ink applied once, and the dragging your fingers or sleeve over them before dry, but how did the voter get those extra marks near the cross after Ryan, Davis, Gayhart, Sweeney, Maute, Kirman, Parker, Watt, Malloy, Driscoll, Lemaire, Russell, and Skully, except by applying the stamp in some way not allowed by law? The voter goes down the first column very recklessly, then begins with Booher on second column and marks that plain, then identi-

fies the mark after Kirman, then puts on three plain marks, then identifies Parker, and finishes his markings by mismarking the last four voted for. Then the cross extends below the line after Driscoll and Russell.

As to the objection to exhibit V, that it has an erasure, it is enough to look at it and see that the erasure is plain, and proven to have been on the paper so as to destroy the texture of the paper, because the point of the cross next to the erasure has spread into the erasure, proving the erasure to have been made before the cross was put on, and also proving very effectually the destruction of the texture of the paper when the ballot is held between the eyes and the light. Exhibit V, being clearly illegal, should be deducted from respondent.

VIII. Exhibit X (Judgment Roll and Exhibits, 38) was objected to by appellant (Statement, 31) "on the ground that after the name S. Bray there is a distinguishing mark consisting of two crosses or two strokes along a horizontal line."

Referring to exhibit X, you will find a ballot plainly marked with two crosses after the name of S. Bray, yet the court in disposing of the objection to it says (Statement, 63; and Judgment Roll and Exhibits, 28): "Defendant's objections to Exhibits X, Y, Z, etc., are overruled; the objections go to the hitherto determined questions of voting pro and con on constitutional amendment 5, and promiscuous crosses on ballots caused by folding before the ink was dry."

Here again, as upon exhibit O, heretofore presented, we have the objection plain to two crosses after the name of S. Bray, the ruling of the court that the objection of defendant goes "to the hitherto determined questions of voting pro and con on constitutional amendments, and promiscuous crosses on the ballot caused by folding before the ink was dry."

This ballot (Judgment Roll and Exhibits, 38), as did exhibit O, unmistakably proves the court to have been in error on both the objection and the decision. There is no attempt upon it to vote either "pro or con on constitutional amendment; nor is there a single cross upon it caused by folding before the ink was dry." But the two crosses described in the objection are plainly upon the ballot, and,

under the decisions of this court, invalidate it; and the learned judge below should have deducted this ballot from respondent, and in failing to do so materially affected the substantial rights of appellant, which entitles him, under the law, to a reversal of the judgment.

Not only are there two plain crosses after the name of S. Bray, but there are also two plain crosses after the name of Douglass, Pollock, and Watt, and two crosses that can be perceived after Russell.

By the use of a magnifying glass two crosses are seen after Russell, whilst the others named are plain to the naked eye.

Further: The marks after Sweeney, Pollock, Watt, Lemaire, and Russell identify the ballot because of their not being either a cross or X. The cone-shaped portion of each, extending upward and to the right, caused by an improper use of the stamp, identifies those markings from those after Van Duzer, Sparks, Bray, Hancock, Littrell, and Maestretti, thus distinguishing and identifying the ballot and destroying it as a valid ballot. However, it is enough that there are two plain crosses after the name S. Bray. (*State* v. *Sadler*, 25 Nev. 181; *Sweeney* v. *Hjul*, 23 Nev. 424, 426.)

We ask that exhibit X be deducted from respondent.

IX. Exhibit AA (Statement, 32) was objected to because of marks not crosses or X's after the names of George, Hancock, and Russell. (Judgment Roll and Exhibits, 39.) The court, passing upon the objection (Statement, 63, and Judgment Roll and Exhibits, 28) said: "Defendant's objections to Exhibits X, Y, Z, AA, BB, etc., are overruled; the objections go to the hitherto determined questions of voting pro and con on constitutional amendment 5, and promiscuous crosses on ballots caused by folding before the ink was dry."

As on Exhibits O and X this AA is as it came from the printer on the constitutional question, and has not a single cross upon it caused by folding before the ink was dry, showing that the learned judge below did not act advisedly on this ballot. This entire ballot is in evidence to determine whether it shall stand or fall.

There are twenty-nine propositions on this ballot upon

which the voter might have expressed himself, if in doing so he kept within the law. He has not attempted any expression upon either United States senator or any state officer, nor the district judgeship, has skipped the office of district attorney, county surveyor, justice of the peace, constable, and constitutional amendment No. 5.

We do not present this phase, of itself, to show an illegal ballot, but to show a voter whose acts tend to establish the fact that this voter was at least very largely disinterested as to many officers to be elected, or else so marked his ballot to identify it; and of the ten marks upon it five are imperfect, although the voter used a stamp by which he might have placed uniform markings on the ballot.

Would this supreme court admit a man to citizenship who displayed no more interest in the welfare of the state than this voter has upon this ballot? If all the electors in the state had acted as did this man, there would not have been a single state officer elected, no district attorney or county surveyor, nor any township officer, and no expression on the constitutional amendment No. 5.

If a man has no more interest than is here shown, then, indeed, he can be bought to vote for a certain candidate or candidates, and this ballot is a plain illustration of how one could mark his ballot by agreement so it would be known afterward that he had lived up to his bargain, and sold his birthright. If the ballot is such that it can be identified it is void. The marks designated as distinguishing are not crosses or X's. The one after George is three-fourths of an X, the one after Hancock is just one-half of an X, the one after Berry is a fraction over three-fourths of an X, as is the one after Russell, whilst the one after Lemaire is as plain a double cross, or two crosses, as can be found.

The ballot being void, we ask this court to deduct it from respondent.

X. Exhibit JJ (Judgment Roll and Exhibits, 40) was objected to by appellant (Statement, 36) "on the ground that there is a double cross opposite the name of Van Duzer in the first column, a distinguishing mark."

The language used by the learned judge in overruling the objection (Statement, 63) is: "Defendant's objection to

exhibit JJ is overruled; the objection goes to the hitherto determined question of voting pro and con on constitutional amendment 5, and promiscuous crosses on ballots caused by folding before the ink was dry."

This ballot is also as it came from the printer on the constitutional amendment; but it has several dim impressions of the crosses made from folding before the ink was dry. But like exhibit, O, X and AA, the ruling does not touch the objection, making four ballots disposed of on grounds not hinted at in the objections, which are twice as many as would elect the appellant.

Our objection to this ballot is because of the two crosses after Van Duzer, and the two crosses are plainly there, and invalidate the ballot. (*State* v. *Sadler*, 25 Nev. 181; *Sweeney* v. *Hjul*, 23 Nev. 424, 426.)

XI.  Exhibit PP (Judgment Roll and Exhibits, 41) was objected to by appellant (Statement, 40) because of distinguishing marks after Van Duzer, Sparks, Allen, double cross after Kelley and Easton, and mark after Berry.

The court overruled the objections on the ground that "the alleged extra crosses were made by folding before the ink was dry, as were also the blears and blotches thereon." (Statement, 40; Judgment Roll and Exhibits, 41.)

An examination of exhibit PP will show that not a single ink mark on the ballot was, or could have been, made by folding before the ink was dry, as there is not an ink impression on the ballot made from folding.  Every ink mark on this ballot (other than the printer's marks) was made by the elector who used it with the rubber stamp.  If the blotch of ink opposite Van Duzer was made by folding, then its imprint would be upon the ballot.  But it is not.  Nor can any copy mark be found on the ballot.  Neither was either of the double crosses after the names Kelley and Easton made by folding the ballot before the ink was dry.  They were made, in each case, by two separate and distinct impressions of the stamp, thus making the two crosses in each of those places.  The ballot itself proves this beyond question.  There is a plain double cross after Kelley, and also after Easton.  Hence the ballot is void.  (*State* v. *Sadler*, 25 Nev. 181; *Sweeney* v. *Hjul*, 23 Nev. 424, 426.)

Aside from the two crosses after both Kelley and Easton, the marks after Van Duzer, Sparks and Bray distinguish and destroy the ballot, as do also those after Dalton, Driscoll, Lemaire, Russell, and Skully. In any event, the one after Van Duzer is fatal. It is not a cross or X. There is no trace of either. Neither was it made by folding before the ink was dry, for if so it would have left its mark somewhere on the ticket, which cannot be found. Therefore, the voter made it and gave it time to dry before folding it, and deliberated whilst it was drying, and having so made it rendered the ballot void. The marking must be a cross or X made by stamping with the rubber stamp. By using a magnifying glass the mark after Sparks will be found to be a double, or two crosses, but nearly one on top of the other. Therefore, exhibit PP should be deducted from respondent.

XII. The two remaining ballots were voted for appellant, but, upon being objected to by respondent, the court held them void and deducted them from appellant.

Exhibit 26 (Judgment Roll and Exhibits, 42) was objected to by respondent (Statement, 20) because of the cross or X being between the name of the candidate and the name of the party and below the line, and because of a figure resembling a figure 6 on the back.

The ruling of the court (Statement, 62) is: "Plaintiff's objection to exhibit 26 is sustained; it has no cross or X in the square opposite the name of defendant, but has one below the dotted line between the name Walsh, Patrick, and the party title," overruling the objection to the figure 6 on the back of the ballot, giving reasons therefor which appear fully on the record.

We desire first to address ourselves to the question of whether the X being where it is after the name of Walsh, Patrick, is, or is not, as much "in the square, and in no other place, after the name of the person for whom he intends to vote" (Stats. 1901, 112), as if it were in the space just after "Silver Party," which is following the name Walsh, Patrick.

To present this question, we first call the court's attention to the fact that there is not a square nor any approximation to one on the whole ballot. Remembering that a parallelo-

gram is a figure or space bounded or enclosed by four straight lines (its sides), the opposite sides or lines being parallel; that a rectangle is a parallelogram in which the four angles are, severally, right angles; and that a square is a rectangle, of which *the four sides* are equal, the above statement can be verified by a mere glance at the ballot.

In the two columns toward the left of the ballot the figure to the right of the party designation is a rectangle of which the longer sides are about twice the length of the shorter sides. In the extreme left column, this is the only enclosed figure. In the middle column there are two rectangles, one enclosing name and party designation, and one to the right of the party designation. In the extreme right column, on which is the mark objected to, there is no parallelogram, rectangle, or square—no enclosed figure whatever—to the right of the party designation. The only enclosed figure in that column is the rectangle enclosing the name and party designation; and here is the only approach to a square that existed, and to the right of Walsh's name the voter made his cross or X in the only approach to a square that would allow the voter to vote for Walsh.

The statute directs the voter to stamp a cross or X in the square after the name of the person for whom he intends to vote. There being no square on the ballot, the voter has stamped his cross or X in the nearest approach to a square to be found on his ballot, and the vote should be counted for appellant.

The objection was that the X was below the line. The court holds that the X is below the dotted line. The X is not below the line first below the name; and it can make no difference that it is mostly below the dotted line.

This court has heretofore counted ballots with the X to the right of the name, if it was fairly between the line first above and below the name.

We therefore ask that the district court be overruled, and that exhibit 26 be counted for appellant.

The twelfth specification of error is that the evidence is insufficient to justify the judgment, and that the judgment is against law and against the pleadings.

XIII. *Insufficiency of Complaint:* This is an action in

contest between contestant and contestee for the office of "Long Term Commissioner of Lander County, Nevada," in which Mr. Lemaire seeks to oust Mr. Walsh from a position he is now holding.

After contestant had rested his case he filed an amended statement, with the avowed purpose of making his pleadings conform to the proofs that he had made.

On February 26, 1903, the court directed that judgment for contestant be entered. (Judgment Roll and Exhibits, 31.)

*What Must Be Alleged?* Comp. Laws, 1623, reads: "When any elector shall choose to contest the right of any person declared duly elected to such office, he shall, within forty days thereafter, file with the clerk of the district court a written statement, setting forth, specifically: First—The name of the party contesting such election, and that he is a qualified elector of the district, county or precinct (as the case may be), in which such election was held. Second—The name of the person whose right to the office is contested. Third—The office. Fourth—The particular cause or causes of such contest." Chitty on Pleadings, vol. I, p. 214, sec. 21, reads: "Whatever circumstances are necessary to constitute the cause of complaint  *  *  *  must be stated in the pleadings." Tested by the above statute, and by Chitty, it will be interesting to examine the amended statement of contestant as to its contents.

(1) In the title of the action contestant is named as "H. R. Lemaire"; in the next few lines contestant is specified as "Henry R. Lemaire, the above-named contestant." And the statement is subscribed and sworn to by "Henry R. Lemaire." In the title of the case he charges "P. Walsh, contestee," with being the party against whom he is proceeding. In line 10, page 1, of the statement, he says that he "complains of Patrick Wals, the contestee above named, and for cause of contest alleges." And again on line 1, page 2, of this statement, he charges "Patrick Wals, elected to said office by a majority of three votes," etc., after which the statement deals with "said Walsh" till it comes to the prayer, when he is called "Patrick Walsh."

Then at line 15, page 1, of the statement, the election is described in these words: "That at the general election held

on the 4th day of November, 1902, contestant and contestee were candidates upon the silver ticket for the office of long term commissioner in and for said county."

No office other than "long term commissioner" is alleged in the statement.

In the prayer of the statement it is said: "Wherefore, contestant prays the judgment of this court that he received a majority of all legal votes cast at said election for said office of long term commissioner, and that he be adjudged and declared duly elected thereto," etc.

(3) Thus it is clearly shown that the statement makes four differently described persons figure in the proceeding, and the only election stated is the "general election held on the 4th day of November, 1902," and the only office described is "long term commissioner," and no term of any office whatever is even hinted at.

(4) The only office of commissioner that can be exercised in the county that is mentioned in the constitution is that of county commissioner. Quoting from the constitution, we find: "The legislature shall provide by law for the election of a board of county commissioners in each county, and such county commissioners shall, jointly and individually, perform such duties as may be prescribed by law." (Comp. Laws, 80, art. IV, sec. 26, Const.)

In following the mandate of the constitution above cited the legislature has uniformly dealt with the office in question as "county commissioner." The first act passed by the legislature under the constitution, relative to the office, was approved March 8, 1865, and the title of the act is "An act to create a board of county commissioners in the several counties of this state, and to define their duties and powers." (Comp. Laws, 2104, *et seq.*)

And all through that act such officer is referred to as "county commissioner," or the board is named "board of county commissioners." (Comp. Laws, 2134, 2137, 2140, 2142, 2143, 2145, 2147, 2148, 2159, 2154–2163, 2165, 2167, 2168, 2171, 2172, 2174–2188, 2191–2201, *et seq.*)

The law fixes the terms of the county commissioners at four years for the long term commissioner, and two years for the short term, from the first Monday in January suc-

ceeding the general election every two years in the respective counties.

(5) The court, in rendering judgment in this case, decided that H. R. Lemaire received 212 good and valid votes at said election for said office, and no more, and that Patrick Walsh received 211 good and valid votes at said election for said office, and no more, and "that said H. R. Lemaire was duly and legally elected to the office of long term county commissioner of said Lander county for the term of four years from the first Monday in January, 1903, and is now entitled to said office and to a judgment to that effect and for costs in this contest incurred. Let judgment be entered accordingly. Dated February 21, 1903," which decision was filed with the clerk of the court on February 26, 1903. (Trans. p. 65; Judgment Roll and Exhibits, 22 to 31.)

Comp. Laws, 3134, is: "The complaint shall contain: First—The title of the action, specifying the name of the court and the name of the county in which the action is brought, and the names of the parties to the action, plaintiff and defendant. Second—A statement of the facts constituting the cause of action, in ordinary and concise language. Third—A demand for the relief which the plaintiff claims." ' (*Marshall* v. *Golden Fleece M. Co.*, 16 Nev. 176; Comp. Laws, 3134.)

In the complaint there is missing the definite parties to the action, a statement of the facts that entitle Mr. Lemaire to that which has been found, concluded and adjudged to him, and a definite term of an office that is not mentioned in the complaint.

In *Marshall* v. *Golden Fleece M. Co.*, 16 Nev. 177, the supreme court of this state laid down this rule: "The court cannot, properly, even by consent of the parties, pass upon questions not raised by the written allegations of the pleadings." (*Marshall* v. *Golden Fleece M. Co.*, 16 Nev. 177; *Boggs* v. *Merced M. Co.*, 14 Cal. 356; *Swan* v. *Smith*, 13 Nev. 260; Bliss on Code Pleading, secs. 135, 138; *Beckett* v. *Guenin*, 25 Pac. 168; *McKinstry* v. *Carter*, 29 Pac. 597.)

If the judgment be modified so that it gives Mr. Lemaire only that which he asks in his amended statement, he would only have a judgment for "long term commissioner in and

for said county," without anyone being able to tell from the statement or pleading when the term of the office claimed by him commenced, for what time it would continue, or when it would terminate.

Such a judgment could do Mr. Walsh, nor anyone else, any harm, nor Mr. Lemaire, nor anyone else, any good, and execution could not issue and be levied on anything under the sun, for no such thing as is given by the judgment could be found by the officer trying to levy the execution.

(7) Then again: "An objection that the judgment is not authorized by the pleadings may be taken upon the judgment roll alone, whether there is a statement on motion for a new trial or not." (*Frevert* v. *Henry*, 14 Nev. 195; *Putnam* v. *Lamphier*, 36 Cal. 158.)

(8) It is a cardinal principle of law that every action in a court must possess proper parties, definitely described, and that there must be a cause of action stated "in ordinary and concise language," and that the thing sought to be recovered must be something that has a real existence, and that real something must be so definitely described that it can be found within the jurisdiction of the court, that it may be taken hold of and controlled and subjected in execution, and in satisfaction of the judgment.

What real existence has the office of long term commissioner in and for said county? And where can it be found within the jurisdiction of this court in this case, or in any case? And who can take hold of the office described?

And how can the office described be subjected to execution in this or any other case in satisfaction of the judgment in this or any other case? An answer to these questions will, we think, be very difficult—in fact, impossible.

(9) *Matters Not in Issue*: "Courts have no power to adjudicate matters not involved in the issues in the case before them, and such adjudications, if made, are not binding." (12 Ency. Pl. & Pr. p. 131.)

In *Gossom* v. *Badgett* (Ky.) 99 Am. Dec. 660, the question now involved and being presented "was raised by the motion for a new trial whether the verdict, though in conformity to the weight of evidence, was sustained by the issue; or, in other words, whether there was not a failure of proof to sup-

port the cause of action alleged in the petition; and that question is now presented for decision." And upon the point thus stated the court said: "There is no provision of the code abrogating the well established principle that *the plain-tiff in an action can only recover upon proof of the cause of action alleged in his pleading."* And again, at page 661, the court said: "The contract, as charged in the declaration, must be so far sustained by a correspondence with that proved as to be identical with it; then the judgment will bar another suit on the same contract. But if the contract proved varies materially from that declared on, the plaintiff ought not to recover."

*James F. Dennis,* for Respondent:

I. Exhibit R is a well-marked ballot and the ink mark complained of was evidently put there after the ballot was deposited by the voter. The rule of the law is just the contrary of what counsel claim it—the presumption is in favor of the legality of the ballot and the burden of proof is on him who assails it. In exhibit JJ it is upon the objecting party to show by a preponderance of evidence that the voter made the error complained of. The burden of proof is on the party who desires the court to give judgment in accordance with his assertion, and he must prove that those facts do exist by a preponderance of evidence. (1 Jones on Evidence, sec. 178; Best on Evidence, 269; Stark on Evidence, 586; Steph. Ev. art. 93; Whart. Ev. secs. 353–357b; *Buford* v. *Furgus,* 165 Pa. St. 310; *Shattuck* v. *Rogers,* 54 Kan. 66; Phil. Ev. p. 493; Green, Ev. sec. 74.)

II. The statement is sufficient; misnomer is a matter for plea in abatement. If it was not Walsh, he should have said so before or at the trial, but he does not deny it now. (*National Bank* v. *Jaggers,* 31 Md. 38; *Insurance Co.* v. *French,* 18 Stow. 409; Freeman on Judgment, sec. 154; *Carewood* v. *Carewood,* 29 Cal. 514; *Thompson* v. *Manrow,* 1 Cal. 428; *Chester* v. *Miller,* 13 Cal. 561; *Harding* v. *Gibbs,* 8 Am. St. R. 345, and note; 84 Am. Dec. 51; *State* v. *McNamara,* 3 Nev. 70.) In reply to the argument of Mr. Woodburn on exhibit R, we submit that it appears from the ballot, the color of the ink, and the size and shape of the ink stain,

blotch or mark, that it was the result of accident on the part of someone handling the ballots after they were cast, and if such marks were held to invalidate ballots it would open the door to the greatest fraud yet heard of. For then any dishonest or evil-minded person handling the ballots after the returns of an election would only have to place sufficient ink stains on enough ballots voted for any particular candidate to have him counted out, on a contest for the office; and such stains would be so easily made while handling the ballots that it would be hard to detect the person making them; and thus the honest result of an election might be changed by the will of one man. That is the reason why this court held, in the case of *State* v. *Sadler*, 25 Nev. 179, that such accidental marks do not invalidate a ballot otherwise free from objection. The learned counsel would have the court overrule its self on authority of the case of *People* v. *Campbell*, 138 Cal. 20. We presume in that case it did affirmatively appear that the ink stain or blotch was placed on the ballot by the voter before the same was cast, and with the intention of distinguishing it. (See note to *Taylor* v. *Bleakley*, 49 Am. St. R. 243, under the head of "Distinguishing Marks"; *State* v. *Sadler*, 25 Nev. 179.) In the latter case, under the classification of marks that do invalidate ballots, this court says: "Ink blotches, evidently the result of accident on the part of the election officers, also dirty finger marks, etc.," will not invalidate a ballot. Considered in the light of the law and of reason, exhibit R was properly counted for the respondent. The authority of *Tebbe* v. *Smith*, 108 Cal. 109, cannot be considered as applicable to exhibit 26, because the law existing in California at that time was not mandatory as to the place where the cross or X should be placed, and our law is mandatory on that question. (Stats. 1901, 112; note to *Taylor* v. *Bleakley*, under the head of "Legal Marks," 49 Am. St. R. 240–242.) The case of *Tebbe* v. *Smith* is considered and distinguished from cases in states having no mandatory laws like the law of our state. (*Parker* v. *Orr*, 158 Ill. 619.)

III. The motion to strike out and dismiss appeal involves a question of practice, as well as the direct violation of the express mandate of our statute law. It will be remembered

that the transcript of appeal in this case, containing the original ballots marked as exhibits, was sent from Austin June 1, 1903, by one of the attorneys of the appellants. The evidence shows conclusively that one or more of the ballots was changed from the condition it was used in the trial court, to the prejudice of respondent. That respondent, having knowledge that the transcript left the office of the clerk of the lower court about June 1st, and that it did not reach the office of the clerk of this court until June 28th, necessarily had to go to the expense of sending his counsel to Carson City to examine the same, and, further, was put to the expense of bringing the trial judge from Eureka to Carson City to testify on the hearing of this motion, and all this was caused by a direct violation of the statute law, which says: "The clerk of the lower court shall transmit such original papers to the clerk of the supreme court, when they are certified as the law directs." (Gen. Stats. Nev. sec. 3862.)

*W. D. Jones* and *William Woodburn*, for Appellant, in reply:

I.  Exhibit R was objected to by the appellant and counted for Lemaire by the court over the objection. The objection is to a blotch of ink at the head of the ticket after the letters "A. D." The ink blotch is a distinguishing mark which makes the ballot void. (*People* v. *Campbell*, 138 Cal. 20, 70 Pac. 918.) In respect to exhibit R, about which the court had some doubt because of it containing a small ink stain at the head of the ballot, the benefit of the court was given the voter in support of his constitutional right, for the reason, among others, that the court's attention was called to the fact by the pleadings, the argument and discussions of counsel, and by judicial notice, "that all of the ballots in the case had been handled and thumbed over by the inspectors of election, county commissioners in recounts, and lawyers in *mandamus* proceedings four separate times before the trial, and° that in consequence the ballots could not possibly be in their original condition at the time of this trial. The ballot is one of the most intelligently marked of the four or five hundred examined." These observations of the district judge are an admission and finding upon his part, after carefully con-

sidering the ballot, in February, when the decision was rendered, that he had doubts of the legality of the ballot because of the blotch of ink complained of, but resolved the doubt in favor of the voter for the reason given by the court when overruling the motion for new trial.

II.   The Australian ballot law is mandatory, and must be strictly construed, if it is to result in a purity of election law.   If the elector casts a clean ballot within the meaning of that law, then he has a constitutional right to support, but if he casts an identified ballot, so made by a large ink blotch at the head of his ticket, that one could see and read, even though he could not read or write, then he has no constitutional right to support.   There was not even an attempt at the trial to prove that any or all the ballots were not in their original condition.   The respondent was the plaintiff at the trial.   At the trial he vouched most sacredly that the ballots had not been changed since they left the voters' hands.   Now, in this court, the attempt is made to show that at the trial the ballots were not in their original condition. Exhibit 26 should be counted for the appellant.   Stats. 1891, p. 50, sec. 20, provides:   "The voter shall prepare his ballot by marking a cross or X after the name of the person for whom he intends to vote for each office."   The word "square" is not mentioned in the entire act.   The legislature has never provided for a square on the ballots.   Stats. 1901, p. 112, provides that the voter shall prepare his ballot by stamping a cross or X in the square, and in no other place, after the name of the person for whom he intends to vote for each office.   The legislature assumed that there was a law then in existence providing for a square, when there was none. There is no provision of law giving express direction to the clerk to place on printed ballots a square opposite the names of candidates.   (Tebbe v. Smith, 108 Cal. 109.)   The California statute does not provide for a square, and is practically the same as ours.   There is not a square upon a single ballot voted in Lander county at the last election.   A square has four equal sides and four right angles.   It is a word of definite signification.   If not a square it cannot be assumed to be such, for the law as to making marks and crosses is mandatory.   Respondent has entirely failed to offer any

argument to refute the argument of appellant upon exhibits
relied upon except R and 26, which is a confession that the
appellant's objections to all exhibits other than R and 26 are
good. Upon the question of the two ballots objected to
because of erasures, appellant argues that the holding of those
two ballots to be valid is exceedingly dangerous to the bal-
lot law. The court has uniformly rejected all ballots for
ereasures that destroyed the texture of the paper, and in
some cases this court has rejected "ballots marked with
crosses and the same erased or scratched out with a lead
pencil." (*State* v. *Sadler*, 26 Nev. 180.) Exhibits M and T
are clearly void because of the marks complained of. Neither
mark is a cross or an X. They are either double crosses or
stars, and must be rejected under *Sweeney* v. *Hjul*, 25 Nev.
423, where this court said: "Said exhibit No. 3, which was
counted by the court over the objection of the appellant,
should have been rejected for the reason that opposite the
name of W. A. Massey, a candidate for Justice of the Supreme
Court, there were placed three straight lines crossing each
other so as to distinctly make a star." The mark com-
plained of on exhibit M is clearly three straight marks cross-
ing each other so as to make a star or double cross. It is
more than a single cross or X, and the law commands either
a cross or X, and prohibits any more or any less. Exhibit T
is too plain for argument. It has seven points showing at
least four straight lines crossing each other, making either a
triple cross, or a seven-pointed star. If it is a star it is
void. (*Sweeney* v. *Hjul*, 23 Nev. 423; *State* v. *Sadler*, 25
Nev. 181.) If it is two or more crosses, it is void. (*Sweeney*
v. *Hjul*, 23 Nev. 424, 426.) Exhibits X, JJ, PP, were
objected to by the appellant because of two crosses after
the names designated in the objections, as pointed out in
our opening brief. The court will find two plain crosses at
each of the places designated. And each of the ballots are
void because of double crosses complained of, under *State* v.
*Sadler*, 25 Nev. 181, *Sweeney* v. *Hjul*, 23 Nev. 424, 426.

III. The admitted facts in this case are: That the clerk
below prepared the record for transmission by supervising
the putting of it together, indexing it, certifying it, wrapping
it, marking and addressing it, and taking it out of the court-

house to the street, when he asked one of the counsel for the appellant who would pay the express charges. Counsel answered that he would. The clerk thereupon said: "All right; you take the bundle or package and put it in the express office and pay the charges," which was done; that the record was transmitted through the express company to Carson City, Nevada, and delivered by the express company to General Woodburn, of counsel for the appellant, who filed it with the clerk of the supreme court. Does this not constitute a transmission by the clerk of the lower court to the clerk of the supreme court? If not, what would? It was here with the clerk. It is now there with the clerk to whom the law directs it to be transmitted. The clerk of the lower court might have walked to Carson City and packed the record all the way so far as the statute is concerned, or he might have sent it by any reasonably safe method. The statute is silent as to method of transmission. It only directs its transmission.

By the Court, FITZGERALD, J.:

This is an election contest, in which the contestee, P. Walsh, appeals to this court from a judgment against him in the court below adjudging that the contestant, H. R. Lemaire, was entitled to the office of long term commissioner of the county of Lander for the term of four years from the first Monday in January, 1903, and also from an order of said court denying his motion for a new trial.

Respondent makes a preliminary motion in this court to dismiss the appeal because of certain irregularities in the manner of the transmission of the papers and record on appeal from the court below to this court. There were irregularities; and, indeed, such as should never occur in such matters. But, while the irregularities were considerable, and we take occasion here to admonish those into whose hands the management of such matters fall that they should be careful to examine the statutes governing the transmission of records to the appellate court, and also to comply therewith, we hardly think that so severe a punishment should be applied as to dismiss the appeal. Therefore the motion to dismiss the appeal is denied.

Respondent objects to the sufficiency of the statement of contest in this case because in the title of the cause the name of the contestant is written "H. R. Lemaire" and contestee's "P. Walsh," and in the body of the statement contestant's "Henry R. Lemaire, the above-named contestant," and the statement is subscribed and sworn to by "Henry R. Lemaire," and in the body of the statement contestant "complains of Patrick Wals, the contestee above named, and for cause of contest alleges," and further on "charge Patrick Wals," and so forth; and again the statement deals with "said Walsh" till it comes to the prayer, when he is called "Patrick Walsh." Perhaps, on demurrer, or on motion to strike out or make certain, it might have been proper for the trial court to have ordered the statement of contest made definite in this respect, as containing misnomers and typographical errors; but appellant, having passed it there, should not, we think, be permitted to avail himself of it here. At the most, it would have been a defective statement of a cause of action, and not a failure to state any cause of action.

The same principle of a defective statement of a cause of action, but not a failure of statement thereof, applies to appellant's next objection, to wit, that the time for the commencement of the term of office of county commissioner for which contestant claimed that he was duly elected over contestee is not definitely stated. Without quoting the allegation of the statement of contest in this respect, we think it sufficient here to state that this objection should likewise have been taken in the trial court by demurrer or motion, and, not having been so taken, it cannot be taken here now.

The foregoing, we think, disposes of all preliminary matters, and brings us to the consideration of the main point in the contest.

A number of ballots cast at the election were brought up as exhibits on the appeal, the rulings upon which by the trial court appellant claims were erroneous. We deem it unnecessary to go into detailed description of the defects claimed in these ballots, except in one case. Inasmuch as all the objections except this one where substantially discussed by this court in the recently decided case of *State* v. *Sadler*, 25 Nev.

131, 58 Pac. 284, 59 Pac. 546, 63 Pac. 128, 83 Am. St. Rep. 573, and, as we do not feel justified in now overruling any decision of this court that was involved in the case named and likewise in this case now before us, nothing could be gained by a repetition here of the discussions made there. There is, however, one alleged defect that counsel for appellant argues on a point not, we think, mentioned in the opinion in *State* v. *Sadler*. That point is that the statute does not provide for a "square" in which the voter shall put the "cross or X" by which he is to designate his choice for an office; and also that the ballots provided by the officers and furnished to the voters at the election in contest did not contain any square, but only a parallelogram, with length about double its width. An inspection of the ballots brought here shows that there was, indeed, on them no mathematically correct square, to wit, a figure with four equal sides and four equal angles. But we think the oblong figures with length about double the width on said ballots was a square in the sense of the statute, and that this argument of counsel is not of sufficient strength to work a change in the decision of this court as made in the case in 25 Nev., 58 Pac., 59 Pac., 63 Pac., 83 Am. St. Rep. In common discourse the phrase "oblong square" is heard not unfrequently.

The trial judge practically found as facts in the case that all of the matters on the ballots that were objected to by appellant—the "blotch," the "blur," etc.—came upon them by innocent acts of voters, to wit, from folding, and so forth, or from the action of others after the ballots had been cast, to wit, persons handling the said ballots in the four proceedings that had been had upon them before they were brought into trial court in this case. We do not find sufficient in the ballots themselves or in the record before us to justify overruling and setting aside this finding.

The objections that there were "erasures destroying texture of paper" is, we think, not sustained by the evidence of the ballots. There were, we think, thin places in the paper on which the ballots were printed, and a roughened surface, caused probably by handling the ballots so frequently; but the texture of the paper was not broken or destroyed.

Opinion of the Court—Fitzgerald, J.

The order of the trial court denying appellant's motion for a new trial, and the judgment thereof in the case, are affirmed.

BELKNAP, C. J., and TALBOT, J., concur.